**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Malicia Lyn Taylor OSBORNE,
Defendant–Appellant.**

No. 02–6526.

United States Court of Appeals,
Sixth Circuit.

Submitted: Sept. 21, 2004.

Decided and Filed: Jan. 13, 2005.

**ARGUED:** Traci H. Boyd, Boyd & Boyd, Lexington, Kentucky, for Appellant. Terry M. Cushing, Candace G. Hill, Assistant United States Attorneys, Louisville, Kentucky, for Appellee. **ON BRIEF:** Traci H. Boyd, Boyd & Boyd, Lexington, Kentucky, for Appellant. Terry M. Cushing, Candace G. Hill, Assistant United States Attorneys, Louisville, Kentucky, for Appellee.

Before: KEITH, MOORE, and GILMAN, Circuit Judges.

## OPINION

MOORE, Circuit Judge.

Defendant-appellant Malicia Lyn Taylor Osborne ("Mrs. Osborne") pleaded guilty in United States District Court to various drug-related offenses. Mrs. Osborne was represented in district court by defense counsel Steven Thornton ("Thornton"). Thornton also represented her codefendant husband James Osborne ("Mr. Osborne"). On appeal, Mrs. Osborne asserts that this dual representation created a constitutionally impermissible conflict of interest. Specifically, Mrs. Osborne contends her Sixth Amendment right to conflict-free counsel was violated and that because of this violation her guilty plea was involuntary. Because we believe that Mrs. Osborne is entitled to a proper hearing on this issue, we shall VACATE the judgment and REMAND the case to the district court for such a hearing.

## I. BACKGROUND

On March 30, 2001, officers of the Taylor County, Kentucky Sheriff's Office went to Mrs. Osborne's residence near Campbellsville, Kentucky after receiving information that marijuana was being grown there. When the officers knocked at the door, both of the Osbornes were present and invited the officers into the home. Smelling marijuana, the officers requested permission to search the residence, and Mrs. Osborne consented in writing. A search of the home revealed 138 marijuana plants, several bags of processed marijuana, and various items of drug paraphernalia. The officers also discovered two rifles and a revolver in Mrs. Osborne's bedroom.

Following the search of Mrs. Osborne's home, the officers proceeded to Mr. Osborne's residence and conducted a search of his home. During this search, the officers discovered an additional 372 marijuana plants growing in Mr. Osborne's basement. During a later search of the residence of Mr. Osborne's mother, the officers found several other firearms.

In October 2001, the grand jury returned an indictment charging the Osbornes with: (1) conspiring to manufacture 447 marijuana plants ("Count 1"); (2) aiding and abetting each other in the cultivation of the 138 plants found at Mrs. Osborne's residence ("Count 2"); (3) aiding and abetting each other in the cultivation of the 309 plants found at Mr. Osborne's home ("Count 3"); and (4) aiding and abetting each other in the possession of 634 grams of marijuana with intent to distribute it ("Count 4"). Mrs. Osborne was also

charged with possession of the three firearms found at her residence ("Count 6").

On October 15, 2001, the Osbornes and a third defendant appeared before a magistrate judge. The magistrate judge informed all three defendants of their right to be represented by counsel. The magistrate judge instructed the defendants that if they could not afford counsel, an attorney would be appointed to represent them. The defendants told the magistrate judge that they all intended to be represented by the same attorney, Danny Butler. The magistrate judge expressed his concern about such an arrangement and informed the defendants that

> at some point in time you may need separate counsel simply because you may have a conflict of interest with respect to your various defenses in this case where it would be inappropriate for one attorney to represent the best interests of all three of you.

Joint Appendix ("J.A.") at 81B.

During the course of the proceedings, the magistrate judge continued to warn the defendants of the potential for a conflict of interest and encouraged them to discuss this problem with their attorney. The magistrate judge even addressed Mrs. Osborne directly on this point, stating "[a]gain, be advised that there may be a conflict of interest involved." J.A. at 81E. Each time the magistrate judge broached the issue, however, he assured the defendants that any potential for conflict was something to be explored in the future when their attorney was present.

Despite their statements during their initial appearance, the Osbornes retained defense counsel Thornton to represent them. At the Osbornes' arraignment, the magistrate judge asked Thornton whether he had discussed with his clients the potential for a conflict of interest. Thornton answered that he had engaged in a "brief discussion" with the Osbornes about the matter. J.A. at 83–83A. He further explained that although he not yet obtained a conflict-of-interest waiver from the Osbornes, he would be "happy" to have them execute one. J.A. at 83–83A. Following this exchange, the magistrate judge then ordered that further proceedings be held prior to trial in order to obtain an "execution of ... waiver of dual representation or appointment of separate counsel or retention of separate counsel, whichever is more appropriate." J.A. at 86.

Further proceedings to address Thornton's joint representation of the Osbornes were then held before the magistrate judge on November 14, 2001. At these proceedings Thornton produced a waiver of dual representation signed by Mrs. Osborne. The executed document, entitled "Waiver of Duel [sic] Representation," states that:

> Malicia Lyn Taylor (now Osborne) having reviewed said [arraignment] Order and having being advised of her right to have separate counsel and having been instructed of same by the Court as well, I, Malicia Lyn Taylor (now Osborne), knowingly and voluntarily waive my right to have sep[a]rate counsel and understand that Steven O. Thornton is representing both me and my husband, James Barry Osborne and waive any conflict which may exist by appearance [sic] or in fact.

J.A. at 38.

After Thornton produced the executed waiver, the prosecutor informed the magistrate judge that he would soon file a motion challenging Thornton's dual representation of the Osbornes. As a result, the magistrate judge appeared reluctant to accept Mrs. Osborne's waiver, because the judge believed that the issue "should be appropriately taken up by the trial judge."

J.A. at 90. The magistrate judge decided that he would:

> [G]o ahead and accept this waiver of dual representation being signed off on by both Mr. Osborne in this case and Mrs. Osborne. Again, of course, if the United States has some problem with that, I would suggest to the United States that it take it up with the trial judge by presentation of motion to the trial court in this case.

J.A. at 90 (emphasis added).

The magistrate judge then read the waiver aloud and questioned Mr. Osborne as to whether he understood: (1) the content of the waiver; (2) that his defenses may be inconsistent with Mrs. Osborne's defense; and (3) that he had a right to separate counsel which he was giving up by signing the waiver. After Mr. Osborne acknowledged that he understood the significance of the waiver, the magistrate judge engaged in a dialogue with Mrs. Osborne:

> THE COURT: Mrs. Osborne or Ms. Taylor, Ms. Malicia Lyn Taylor Osborne, same questions to you. You signed off on the same kind of document?
>
> DEFENDANT MALICIA TAYLOR OSBORNE: Yes, Your Honor, I understand.
>
> THE COURT: Do you understand your right to have separate counsel in this situation, and you at least for the present time are giving up that right, is that correct?
>
> DEFENDANT MALICIA TAYLOR OSBORNE: That's correct, Your Honor.
>
> THE COURT: This is your signature on this document?
>
> DEFENDANT MALICIA TAYLOR OSBORNE: Yes, Your Honor.

J.A. at 92–93. At the conclusion of the proceedings the magistrate judge stated that he would accept the waiver "for the time being" but reiterated that government and defense counsel could "take up whatever motions they believe are appropriate with the trial court in this situation." J.A. at 93. The magistrate judge then entered an order accepting Mrs. Osborne's waiver.

Less than a week after these proceedings, the government filed a motion in district court to disqualify Thornton based upon a conflict of interest. The government was concerned that Thornton's joint representation of the Osbornes might inhibit Thornton's performance during plea negotiations and trial based on the Osbornes' differing levels of culpability. The government alleged that it had discussed with Thornton the possibility that either of the Osbornes could obtain a lesser sentence by agreeing to cooperate with the government against the other. The government posited that, because the Osbornes were represented by the same defense counsel, a serious conflict of interest would arise if either of the Osbornes wished to cooperate with the government. Despite the government's concerns and the magistrate judge's earlier assurances that the district court would address any potential conflict of interest, the district court summarily denied the motion as moot on the grounds that the magistrate judge had already conducted a conflict-of-interest hearing and had accepted each defendant's waiver.

Prior to trial, the Osbornes both decided to accept a plea agreement from the government. Pursuant to her plea agreement, Mrs. Osborne agreed to plead guilty to Counts 2 and 6 of the indictment. In exchange, the government agreed to move for a dismissal of Counts 1, 3, and 4 and to refrain from opposing a sentence reduction for acceptance of responsibility. The plea agreement also listed the penalties at-

tached to each offense, most importantly that Count 2 carried a mandatory-minimum prison sentence of not less than five years. A change of plea hearing was then held where the magistrate judge questioned Mrs. Osborne to ensure that her guilty plea was knowing and voluntary. Upon completion of this questioning, the magistrate judge recommended that the district court accept Mrs. Osborne's guilty plea. The district court then accepted Mrs. Osborne's guilty plea.

At sentencing, Thornton moved for downward departure, asserting that Mrs. Osborne should be sentenced based on the sentencing guidelines recommendations and not pursuant to Count 2's mandatory-minimum sentence. The district court concluded, however, that it lacked the authority under the circumstances to impose a sentence below the statutory mandatory-minimum. Mrs. Osborne was then sentenced to five years of imprisonment on Count 2 and five years on Count 6, with the sentences to be served concurrently.

## II. ANALYSIS

### A. Standard of Review

■ The district court's legal conclusions that no conflict of interest existed and that Mrs. Osborne's guilty plea was constitutionally valid are reviewed de novo. *United States v. Jackson,* 181 F.3d 740, 744 (6th Cir.1999); *United States v. Walker,* 160 F.3d 1078, 1096 (6th Cir.1998). The underlying factual bases upon which the district court's conclusions rest are reviewed for clear error. Jackson, 181 F.3d at 744.

■ Mrs. Osborne did not allege in district court that her defense counsel possessed a conflict of interest which violated her Sixth Amendment rights. On the contrary, it was the prosecutor who sought to disqualify Thornton based on his concern that a serious potential conflict of interest existed. This factual scenario may suggest that Mrs. Osborne failed properly to preserve this issue in district court and thus may only prevail on appeal if the conflict of interest represents a "plain error." See *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The plain-error standard is inapplicable in this case, however, based on the legal distinction the Supreme Court has created between forfeiture and waiver. "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.' " *Id.* at 73, 113 S.Ct. 17703 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). The plain-error standard applies only when the defendant has forfeited a right, not when the defendant has waived that right.

■ The plain-error standard is inapplicable under the circumstances of this case. Mrs. Osborne did not forfeit her Sixth Amendment rights by failing to assert them in district court. Instead when the issue was raised, she executed a document which purported to waive her right to conflict-free counsel. Therefore, we do not consider whether the district court committed plain error in determining that no conflict of interest exists. Instead, we must ask whether Mrs. Osborne's waiver was "knowing, intelligent, and voluntary." *United States v. Straughter,* 950 F.2d 1223, 1234 (6th Cir.1991). If the waiver was properly executed in district court, we may not address Mrs. Osborne's claim that a conflict of interest makes her guilty plea invalid. If, however, the waiver is unknowing or involuntary as Mrs. Osborne asserts, then we may consider whether her conviction should be reversed.

## B. Waiver

Federal Rule of Criminal Procedure 44(c) dictates the proper procedure for a district court to follow where joint representation of co-defendants creates a potential for a conflict of interest. The Rule requires that "[t]he court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation." Fed.R.Crim.P. 44(c). Then, "[u]nless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel." *Id.* Appropriate measures include obtaining a waiver of the right to conflict-free counsel from the defendant. Fed.R.Crim.P. 44(c) Advisory Committee Notes (1979 Amendment).

If a court decides to remedy any concerns over a potential conflict of interest by obtaining a waiver from the codefendants, then Rule 44 and its advisory notes dictate the type of waiver which the court should secure. Primarily, the court must be convinced that the defendants understand the rights being waived and the consequences of the waiver of those rights. Fed.R.Crim.P. 44(c) Advisory Committee Notes (1979 Amendment). The court must personally address each defendant and inform him or her of the potential hazards of representation by a single attorney, as well as his or her right to separate representation. *Id.* The court must assure itself that the defendants understand the nature and consequences of joint representation.

Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he

has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections.

Fed.R.Crim.P. 44(c) Advisory Committee Notes (1979 Amendment) (citation omitted).

■ The Rule 44(c) hearing conducted in this case failed to comport with the Rule's requirements in several respects. First, the Osbornes were never informed of the particular types of conflict of interest which might arise from joint representation in their case. The waiver document executed by Mrs. Osborne merely stated that she agreed to "waive any conflict which may exist." J.A. at 38. The waiver document did not inform Mrs. Osborne of the types of potential hazards which joint representation could create. Similarly, the magistrate judge failed to explain the risk that Thornton's representation of both spouses might present. The only explanation provided by the magistrate judge was that there may be "a conflict of interest with respect to your various defenses." J.A. at 81B. At no time did the magistrate judge inform Mrs. Osborne that joint representation could limit her ability to obtain a favorable plea agreement or result in a lengthier sentence. Mrs. Osborne was provided inadequate information as to the nature of the right she was purportedly waiving and the potential consequences of that waiver.

We have no means of knowing whether Mrs. Osborne was provided with information regarding the nature of her rights by Thornton prior to her signing the waiver. The magistrate judge failed to question Mrs. Osborne as to whether she had been fully informed by Thornton of the potential concerns raised by his joint representation of the Osbornes. Instead, the magistrate judge merely verified that Mrs. Osborne had signed the submitted waiver and un-

derstood its contents. The magistrate judge should have investigated further to confirm by means of a narrative response that Mrs. Osborne understood "the details of [her] attorney's possible conflict of. interest and the potential perils of such a conflict." Fed.R.Crim.P. 44(c) Advisory Committee Notes (1979 Amendment).

Most troubling, however, is that the hearing left ambiguity as to whether the magistrate judge accepted the waiver only provisionally. The magistrate judge stated during the hearing that he would accept the waiver "for the time being," but that the conflict-of-interest determination should be made by the district court. J.A. at 93 (emphasis added). These statements suggest that the Rule 44(c) hearing did not result in a conclusive waiver of Mrs. Osborne's right to conflict-free counsel. This ambiguity was then compounded by the district court's failure to address the potential conflict of interest despite the magistrate judge's earlier assurances that the issue would be resolved by the district court. Additionally, the district court erred in denying the government's motion for disqualification as moot because the district court had an ongoing obligation to monitor and address potential conflicts as they arose. See Fed.R.Crim.P. 44(c) Advisory Committee Notes (1979 Amendment); *United States v. Salado,* 339 F.3d 285, 290 (5th Cir.2003) (noting that "the obligation placed upon the court by Rule 44(c) is a continuing one") (quotation marks and citation omitted); *United States v. Solomon,* 856 F.2d 1572, 1580 (11th Cir.1988), *cert. denied,* 489 U.S. 1070, 109 S.Ct. 1352, 103 L.Ed.2d 820 (1989) ("[T]he mere fact that a rule 44(c) inquiry was conducted in the early stages of the case does not relieve the court of all responsibility in this regard thereafter.") (quotation marks and citation omitted).

Based on these critical flaws, we must question the validity of Mrs. Osborne's waiver, for it is unclear whether Mrs. Osborne was provided with sufficient information to execute a "knowing, intelligent, and voluntary" waiver of her rights. Straughter, 950 F.2d at 1234. We acknowledge, however, that such a failure by the district court to undertake or adequately execute a Rule 44(c) inquiry does not provide grounds for reversal absent an actual conflict of interest. Fed.R.Crim.P. 44(c) Advisory Committee Notes (1979 Amendment) ("The failure in a particular case to conduct a rule 44(c) inquiry would not, standing alone, necessitate the reversal of a conviction of a jointly represented defendant."); see also *United States v. Freshour,* Nos. 94–5448, 5759, 5758, 64 F.3d 664, 1995 WL 496662, at *10 (6th Cir. Aug.17, 1995), *cert. denied,* 516 U.S. 1112, 116 S.Ct. 910, 133 L.Ed.2d 842 (1996) (noting that a "district court's failure to comply with Rule 44(c), without more, does not compel reversal"); *United States v. Gilliam,* 975 F.2d 1050, 1053–54 (4th Cir. 1992); *United States v. Holley,* 826 F.2d 331, 333 (5th Cir.1987). Thus, in order to reverse Mrs. Osborne's conviction, we must consider whether an actual conflict of interest existed.

The Supreme Court has defined an actual conflict in the Sixth Amendment context as "a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor,* 535 U.S. 162, 172 n. 5, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). Mrs. Osborne asserts that because of a conflict of interest Thornton performed deficiently during plea negotiations and at sentencing. Specifically, Mrs. Osborne asserts that: (1) Thornton ought to have negotiated with the government to obtain a lesser sentence for Mrs. Osborne in exchange for her testimony against Mr. Osborne; (2) Thornton ought to have sub-

mitted a "safety valve" motion during sentencing; and (3) Thornton misinformed her of the penalties associated with pleading guilty to Count 2 of the indictment.

The record provides little evidence upon which we can determine whether Thornton's actions were based on conflicted loyalties or were merely legal strategy. There is only circumstantial evidence to suggest that Thornton failed to act properly during plea negotiations and at sentencing because of a conflict of interest. As to sentencing, there is little evidence indicating Thornton's motivations for his actions. Thornton may have forgone making a "safety valve" motion because it was a legally weak argument. Additionally, it is not entirely clear that Mrs. Osborne was misinformed of the penalties associated with Count 2, as both the magistrate judge and the plea agreement indicated that there was a statutory mandatory-minimum sentence of five years associated with Count 2. Even if Thornton did mislead Mrs. Osborne, however, no evidence indicates that his actions were influenced by his conflicted loyalties.

Similarly, it would be difficult for Mrs. Osborne to prove that Thornton's actions during plea negotiations were motivated by a conflict of interest. The record is simply too sparse to establish the facts necessary to permit us to conclude that Mrs. Osborne's guilty plea was invalid as a result of an actual conflict of interest. The lack of evidence of a conflict of interest flows, however, from the district court's failure properly to conduct an adequate Rule 44(c) hearing. During such a hearing, the district court would have elicited the defense counsel's response to the government's motion to disqualify. The district court would have obtained information as to whether a more favorable plea agreement than the one eventually accepted by Mrs. Osborne had actually been

communicated to Thornton and what the terms of this earlier offer might have been. The district court could also have ascertained why Thornton did not pursue a plea agreement on Mrs. Osborne's behalf which may have resulted in a more lenient sentence in exchange for her cooperation against Mr. Osborne. Additionally, the district court would have been able to determine whether Mrs. Osborne would have been willing to accept a more favorable offer which may have required her to testify against her husband. Because the district court failed to fulfill its obligation to conduct such a hearing on the government's motion, however, we are left to speculate as to what the answers to these and other relevant questions might have been.

Given that we are unable to determine whether an actual conflict existed as a result of the district court's failure to conduct an adequate Rule 44(c) hearing, we believe that Mrs. Osborne should now be provided with such a hearing. Several Circuits, ours among them, have remanded cases to the district court for "after the fact" hearings when the appellant was able to allege sufficiently a conflict of interest and when a Rule 44(c) hearing was not held or was inadequate. *See, e.g., Salado*, 339 F.3d 285; Gilliam, 975 F.2d 1050; *United States v. Nemecek*, No. 90–3368, 931 F.2d 894, 1991 WL 66055 (6th Cir. Apr.29, 1991). We believe that this approach is appropriate in this case.

In Gilliam, the Fourth Circuit addressed a similar situation where the district court failed to comport with Rule 44(c) yet no actual conflict then could be proven. There the defendant and his codefendant father were charged with various drug-related offenses and represented by the same defense counsel. Gilliam, 975 F.2d at 1052. No Rule 44(c) hearing was held prior to trial, and the defendants were

tried and convicted on all counts. At sentencing, Gilliam obtained separate counsel from his father and raised a concern about a conflict of interest. The district court rejected these concerns on the grounds that the Gilliam's argument was made too late and that the district court judge did not observe anything that suggested a conflict of interest existed. On appeal, Gilliam asserted that he had rejected a plea bargain offered during trial. Gilliam argued that had he been provided separate counsel, he would have been persuaded to accept the plea bargain. Gilliam alleged that his defense counsel failed to persuade him to accept the plea bargain because of conflicted loyalties.

The Fourth Circuit determined that the district court erred by failing to conduct a Rule 44(c) hearing because "an actual conflict quite possibly developed" as a result of the codefendants' joint representation. *Id.* at 1052. The court acknowledged that it could not reverse Gilliam's conviction given that the failure to make a proper Rule 44(c) inquiry "is not, standing alone, sufficient to require reversal." *Id.* at 1053–54. The Fourth Circuit concluded, however, that the proper remedy was to remand the case to district court so that a Rule 44(c) hearing could be conducted to determine if the actual conflict alleged on appeal had in fact occurred. *Id.* at 1054.

Similarly, the Fifth Circuit's determination in Salado is instructive as to the proper remedy in this case. Salado, 339 F.3d 285. In Salado, the defendant was initially represented by the same defense counsel as one of his codefendants. During pretrial hearings, the magistrate judge advised the defendants of their right to separate counsel and provided a lengthy explanation of the perils of joint representation. Salado then chose to obtain separate counsel. Salado later again switched defense counsel, this time retaining the same defense counsel as another codefendant. Salado pleaded guilty without a plea agreement. On appeal, Salado asserted that the district court erred in failing to conduct a proper Rule 44(c) hearing and that as a result his plea was unknowing and involuntary. *Id.* at 287–88.

The Fifth Circuit agreed with Salado that the district court had failed to conduct a proper Rule 44(c) hearing, despite the magistrate judge's earlier warnings to Salado. *Id.* at 292. As in Gilliam, the court acknowledged that "failure to comply with Rule 44(c) does not, of itself, entitle a defendant to relief." *Id.* at 291 (quotation marks and citation omitted). The Fifth Circuit concluded, however, that the failure of the district court to comply with Rule 44(c) and "the sparsity of the record" which precluded the court from determining whether an actual conflict occurred, "mandate[d] that [the court] remand the case to the district court for an 'after the fact' Rule 44(c) hearing to determine whether there was an actual conflict of interest." *Id.* at 292.

In this case we are faced with similar circumstances as those in Gilliam and Salado. The district court failed to conduct a proper Rule 44(c) hearing after the court had reason to believe that a conflict of interest might have developed. Yet, the record is insufficient to allow us to determine whether an actual conflict of interest occurred as a result of Thornton's joint representation of the Osbornes. The proper remedy therefore is not to reverse Mrs. Osborne's conviction but rather to remand the case to district court so that an "after the fact" Rule 44(c) hearing may be conducted.

"By remanding the case, we do not mean to dictate the result to be reached by the [district] court" after a hearing is held. Gilliam, 975 F.2d at 1054. We leave it to the district court to determine following

the hearing whether an actual conflict existed and whether such a conflict of interest affected the knowing and voluntary nature of Mrs. Osborne's guilty plea.

## III. CONCLUSION

For the reasons explained above, we VACATE the judgment and REMAND to the district court to conduct a Rule 44(c) hearing to determine whether Mrs. Osborne was deprived of the effective assistance of counsel because of a conflict of interest caused by the joint representation by Thornton of Mr. and Mrs. Osborne.